UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

Case Number: 19-61637-CIV-MORENO
(18-60058-CR-MORENO)

LENDEN PENDERGRASS,

      Movant,

vs.

UNITED STATES OF AMERICA,

      Respondent.

_____/

## I.    INTRODUCTION

This matter is before the Court on Movant's Amended Motion to Vacate filed pursuant to 28 U.S.C. § 2255. ECF No. 8. This cause has been referred to me for Report and Recommendation on any dispositive matter. ECF Nos. 55, 70.

Movant, Lenden Pendergrass, is a prisoner currently incarcerated at Jesup Federal Correctional Institution. Mr. Pendergrass is currently serving a 292-month prison sentence following his guilty plea to one count of, possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), in Case No. 18-60058-CR-MORENO brought in the United States District Court for the Southern District of Florida. Mr. Pendergrass is also serving a concurrent 180-month prison sentence following his guilty plea to one count of conspiracy to possess with intent to distribute cocaine and fentanyl, in violation of 21 U.S.C. § 846, and one count of possession with

intent to distribute fentanyl and cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) in the same case.

Mr. Pendergrass filed the instant Motion to Vacate (the "Motion") challenging the constitutionality of his conviction and sentence, alleging ineffective assistance of counsel, failure of the indictment to allege necessary facts, and failures of both the Court and counsel pertaining to 18 U.S.C. § 922(g)(1). ECF No. 8. On August 19, 2021, I held an evidentiary hearing that was limited only to testimony and evidence regarding Claimant's argument that his counsel was ineffective for failing to file a direct appeal. ECF No. 74. I have reviewed the Motion, the Government's Response (ECF No. 22), the Mr. Pendergrass' Reply (ECF No. 29), the testimony given at the evidentiary hearing, and the evidence submitted at the hearing. I am fully advised and this matter is now ripe for review.

After careful consideration, and as further discussed below, the Undersigned **RECOMMENDS** that the Motion to Vacate be **DENIED**.

## II.   FACTUAL AND PROCEDURAL HISTORY

On March 8, 2018, a federal grand jury indicted Mr. Pendergrass for: (1) Count 1—conspiracy to possess with intent to distribute cocaine and fentanyl, in violation of 21 U.S.C. § 846; (2) Counts 2 through 9—distribution of a controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); (3) Count 10—possession with intent to distribute fentanyl and cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); (4) Count 11—possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); and (5) Count 12—possession of a firearm in furtherance of a drug

trafficking crime, in violation of 18 U.S.C. § 924(c). Case No. 18-60058-CR, ECF No. 10.

On April 18, 2018, pursuant to a written plea agreement, Mr. Pendergrass pleaded guilty to Counts 1, 10, and 11. Case No. 18-60058-CR, ECF No. 24 at 1. The plea agreement contained a broad appeal waiver. *Id*. at 6–7. Furthermore, the plea agreement provided that, in its "sole and unreviewable judgment," the Government could file a motion before or after sentencing "informing the Court that [Mr. Pendergrass] ha[d] provided substantial assistance and recommending that [his] sentence be reduced" (a "Rule 35 motion"). *Id*. at 4–5.

A factual proffer supported the plea agreement. Case No. 18-60058-CR, ECF No. 23. According to the factual proffer, Mr. Pendergrass and his codefendant, Heather Loiola, conspired to possess with intent to distribute fentanyl from July, 26, 2017 to February 23, 2018. *Id*. at 1. Mr. Pendergrass "possessed with the intent to distribute and distributed . . . a total of approximately four ounces of fentanyl per week, for at least the approximate eight-month period of the charged conspiracy." *Id*. at 1–2. Mr. Pendergrass, "a convicted felon, also possessed a firearm and ammunition which had traveled in interstate commerce." *Id*. at 2.

The factual proffer sets forth several dates on which Mr. Pendergrass conspired to distribute, and in fact distributed, fentanyl. For instance, on August 3, 2017, Mr. Pendergrass provided a confidential source with $1,000 of purported heroin that a laboratory analysis confirmed to be fentanyl compound. *Id*. at 2. Likewise, on

3

February 2, 2018, Mr. Pendergrass supplied Loiola with .5 gram of purported heroin that a laboratory analysis confirmed to be fentanyl. *Id*. at 3.

According to the factual proffer, on February 23, 2018, agents executed a search warrant at Mr. Pendergrass' residence. *Id*. Among other things, the agents discovered approximately four ounces of fentanyl and a 9mm handgun and ammunition. *Id*. at 3–4. During a post-Miranda interview, Mr. Pendergrass "admitted that he sold controlled substances including crack and heroin but denied that he sold fentanyl." *Id*. at 4. Mr. Pendergrass also "admitted that he recently handled a firearm in his residence but stated that the firearm belonged to his son." *Id*.

On April 18, 2018, the Court held a change-of-plea hearing. Case No. 18-60058-CR, ECF No. 55. Attorney Howard S. Hecker represented Mr. Pendergrass. *Id*. at 1.

The Parties clarified that Counts 1 and 10 involved only fentanyl, not cocaine and fentanyl. *Id*. at 13–14. Regarding Count 11, Mr. Pendergrass agreed that he was a convicted felon and possessed a firearm and ammunition on Feb 23, 2018. *Id*. at 15.

Mr. Pendergrass stated that: (1) he talked to Mr. Hecker about everything in his case; (2) he was satisfied with his representation; (3) no one forced him to plead guilty; and (4) he was pleading guilty because he was guilty. *Id*. at 8, 45. Further, Mr. Pendergrass agreed that the factual proffer was true and that he distributed fentanyl. *Id*. at 35, 41. Mr. Hecker stated that, after reviewing discovery, he was satisfied that there was a factual basis for the offense. *Id*. at 44.

The Court accepted his guilty plea, finding that it was knowing, intelligent, voluntary, and factually supported. *Id*. at 46. The Court also found that Mr. Pendergrass was "represented by competent counsel with whom [he] expressed satisfaction." *Id*.

The Presentence Investigation Report ("PSI") calculated a base offense level of 32. PSI ¶ 36. The PSI added three two-level enhancements because Mr. Pendergrass: (1) possessed a dangerous weapon; (2) made a credible threat of violence or directed the use of violence; and (3) maintained a premises to manufacture or distribute a controlled substance. *Id*. ¶¶ 37–39. Further, the PSI added a four-level enhancement based on a finding that Mr. Pendergrass organized or led extensive criminal activity. *Id*. ¶ 41. After these enhancements, the adjusted offense level was 42. *Id*. ¶ 43.

The PSI found that Mr. Pendergrass was a career offender based on "at least two prior felony convictions of either a crime of violence or a controlled substance offense." *Id*. ¶ 44. Additionally, the PSI found that Mr. Pendergrass was an armed career criminal based on three previous convictions in Florida for narcotics trafficking. *Id*. ¶ 45. Pursuant to U.S.S.G. §§ 4B1.1(b) and 4B1.4(b)(1), the offense level was 42. *Id*.

After a three-level reduction for acceptance of responsibility, the total offense level was 39. *Id*. ¶¶ 46–48. Based on a total offense level of 39 and a criminal history category of VI, the guideline imprisonment range was 360 months to life. *Id*. ¶ 123.

On June 29, 2018, the Court held a sentencing hearing. Case No. 18-60058-CR, ECF No. 56. The Court sustained Mr. Hecker's objection to the four-level

enhancement for being a leader or organizer. *Id*. at 12. This resulted in a total offense level of 35 and a criminal history category of VI, which rendered a guideline imprisonment range of 292 to 365 months. *Id*. The Court imposed a 292-month sentence on Count 11, and concurrent 180-month sentences on Counts 1 and 10. *Id*. at 20. The Court entered judgment on the same day. Case No. 18-60058-CR, ECF No. 45. Mr. Pendergrass did not appeal.

Mr. Pendergrass timely filed the Motion to Vacate under § 2255, which he dated June 27, 2019. ECF No. 1 at 12.[1] The present Motion is dated August 26, 2019. ECF No. 8 at 13. The Motion alleges three claims, each of which sets forth various subclaims. *Id*. at 5–6, 8. Each subclaim is wholly conclusory. *Id*.

In its Response, the Government argues that although a hearing may be necessary on Claim 1, subclaim 1 (failure to file a direct appeal), the remaining subclaims are meritless. ECF No. 22 at 5–6, 10, 14–24. Further, the Government argues that two of the subclaims are untimely because they do not "relate back" to the timely filed Motion. *Id*. at 4–6.[2]

---

[1] *See Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009) ("Under the 'prison mailbox rule,' a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." (citations omitted)); *see also Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001) ("Absent evidence to the contrary in the form of prison logs or other records, [courts] will assume that [a prisoner's filing] was delivered to prison authorities the day he signed it . . . .").

[2] I need not apply the time bar and may, for the reasons more thoroughly explained below, deny them on the merits. *See Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999) (per curiam) (noting that "§ 2255's deadline is a garden-variety statute of limitations, [] not a jurisdictional bar"); *see also Aron v. United States*, 291 F.3d 708, 718 (11th Cir. 2002) (Carnes, J., concurring) (citing *Sandvik* for the

In his Reply, Mr. Pendergrass agreed that an evidentiary hearing was warranted on his subclaim that Mr. Hecker failed to file a direct appeal, but did not address the Government's arguments regarding his remaining subclaims. ECF No. 29.

Subsequently, on December 23, 2020, the Court appointed Attorney Michael Gary Smith to represent Mr. Pendergrass and scheduled the case for a hearing on the failure-to-file-direct-appeal claim. ECF Nos. 57–58. After the hearing had been set, Mr. Pendergrass and the Government filed their respective pretrial narrative statements. ECF Nos. 65, 68.

## III.   EVIDENTIARY HEARING

After a slight delay due to technological difficulties, the evidentiary hearing took place on August 19, 2021. ECF No. 74. At the hearing, Mr. Pendergrass' counsel called Mr. Pendergrass' brother, Jackie Williams, to testify, as well as Mr. Pendergrass himself. The Government called Mr. Hecker to testify. The following documents were admitted into evidence by the Government in support of Mr. Hecker's testimony: a "New Matter Index Card" ("Exhibit 1") and an invoice for payments from Mr. Pendergrass and his family ("Exhibit 2").

A. *Mr. Williams' Relevant Testimony*

Mr. Williams is Mr. Pendergrass' brother. Hr'g Tr. 7:10, Aug. 19, 2021. Mr. Williams testified that he had spoken to Mr. Pendergrass after his sentence and understood that he was trying to appeal the sentence. *Id*. at 8:14–15. He stated that

---

proposition that "a district court is not required to rule on whether an asserted statute of limitations bar applies if the § 2255 motion may be denied on other grounds").

Mr. Pendergrass asked him to visit Mr. Hecker to pay him for the appeal. *Id*. at 9:4–6. About one week after the sentencing, Mr. Williams stated that he withdrew about $2500 from his account and then went with his nephew, Tavarus Welch, to deliver the money to Mr. Hecker at his office. *Id*. at 10:16–17; 11:18–12: 3. Mr. Williams testified that Mr. Hecker told them that they $2500 would go towards Mr. Pendergrass' appeal; Mr. Williams relayed that information back to Mr. Pendergrass. *Id*. at 13:1–13. Mr. Williams testified that he did not speak to the lawyer after going to his office to make the payment and does not personally have a receipt, although Mr. Welch did get a receipt from Mr. Hecker. *Id*. at 13:20–14:18. When asked by the Government on cross examination if he was aware that Mr. Pendergrass was, at the time, planning to cooperate with the Government in exchange for a Rule 35 motion, Mr. Williams stated that he didn't know anything about his brother "flipping." *Id*. at 16:15–17:12. He reiterated that it was his understanding that he was paying Mr. Hecker for the appeal. *Id*. at 17:22–24.

B. *Mr. Pendergrass' Relevant Testimony*

Mr. Pendergrass testified that prior to his sentencing, he was under the impression, given to him by Mr. Hecker, that he was going to receive a 10-year sentence. *Id*. at 21:19–22:2. He said that when the Judge sentenced him to 24 years and 8 months, he immediately turned to Mr. Hecker and said "What can we do now?" to which Mr. Hecker replied "We can try to do an appeal." *Id*. at 23:5–6. Mr. Pendergrass testified that it was during this discussion that he told Mr. Hecker that he did, in fact, want to appeal and that he would pay Mr. Hecker more money if

necessary. *Id.* at 23:11–13; 23–25. Mr. Pendergrass testified that he sent an e-mail to Mr. Hecker about the appeal the very next day, to which Mr. Hecker never responded.[3] *Id.* at 25:11–15. He testified that he heard from Mr. Williams that Mr. Hecker had been paid an additional $2500 for the appeal by Mr. Williams and Mr. Welch. *Id.* at 26:2–3. Mr. Pendergrass claims that he did not have any further discussions with Mr. Hecker regarding an appeal but trusted that he was filing the appeal. *Id.* at 26:9–11. On re-direct, Mr. Pendergrass testified that the only communications he had with Mr. Hecker after sentencing was one conversation about the status of assisting the Government with their case and the status of the Rule 35 Motion, and one brief conversation about the appeal in which Mr. Hecker told Mr. Pendergrass he would "get back with [him]" about the appeal. *Id.* at 38:7–23.

On cross examination, Mr. Pendergrass stated that prior to the sentencing, he and his family paid Mr. Hecker the full retainer fee of $10,000.[4] *Id.* at 27:21–24. Mr. Pendergrass acknowledged that an appeal waiver was included as part of his plea agreement and he recalled Judge Moreno explaining that to him at the change of plea hearing. *Id.* at 31:19 – 32:3. Mr. Pendergrass also acknowledged that Mr. Hecker successfully argued to Judge Moreno that some of the enhancements should not apply. *Id.* at 32:25–33:11. He did not recall Mr. Hecker explaining to him that if he

---

[3] Mr. Pendergrass did not submit these e-mails as evidence in support of his motion. He testified on cross examination that he tried to obtain them, but was unable to do so because "they were gone." Hr'g Tr. 27:11–19, Aug. 19, 2021.

[4] Mr. Pendergrass stated that he has receipts showing that they paid Mr. Hecker the full retainer fee, however, those receipts were not submitted as evidence for this proceeding. Hr'g Tr. 28:3–7, Aug. 19, 2021.

filed an appeal, the Government would likely not file the Rule 35 motion. *Id.* at 33:22–34:2. Finally, Mr. Pendergrass testified that he did not tell his family he was cooperating with the Government. *Id.* at 34:6. Instead, he only told them that he was appealing his sentence on the basis that his PSI was incorrectly calculated; that is what they were told they were paying Mr. Hecker to do. *Id.* at 34:9–35:2.

C. *Mr. Hecker's Relevant Testimony*

Mr. Hecker has over 35 years of criminal defense experience, both in federal and state court. *Id.* at 43:3–6. Mr. Hecker testified that he was retained by Mr. Pendergrass and agreed to reduce his normal fee to $10,000 for a change of plea; Mr. Pendergrass' family made an initial payment of $4500. *Id.* at 43:23–44:5; 46:16–18. *See also* ECF No. 68-1 (Exhibit 1). He went on to explain that prior to the change of plea hearing, he thoroughly reviewed the plea agreement with Mr. Pendergrass. Hr'g Tr. 53:13–15, Aug. 19, 2021. When it was time for the sentencing hearing, he went over the PSI with Mr. Pendergrass in person prior to the hearing and successfully argued against some of the PSI calculations. *Id.* at 53:8–25.

Mr. Hecker testified that immediately after being sentenced, Mr. Pendergrass asked him, "Can we appeal?" to which Mr. Hecker responded, "Appeal what?" and Mr. Pendergrass answered, "the mother***ing 24 years the judge just gave me." *Id.* at 55:7–11. According to Mr. Hecker, he then explained to Mr. Pendergrass that there was likely nothing to appeal given that the Judge had just agreed with the Defense's arguments regarding the PSI calculation and the appeal contained a broad waiver. *Id.* at 55:12–17. He also explained to Mr. Pendergrass that if he were to go forward

10

with an appeal, the appellate court could reverse what Judge Moreno had found and sentence him to more time. *Id*. Additionally, he stressed to Mr. Pendergrass that filing an appeal could hurt his chances of the Government filing the Rule 35 motion. *Id*. at 55:18–19. Mr. Hecker reiterated that Mr. Pendergrass only asked whether they could appeal or not; he did not specifically ask Mr. Hecker to file an appeal after Mr. Hecker explained to him the potential negative consequences of doing so. *Id*. at 55:22–23.

Mr. Hecker testified that after the sentencing, he did not hear from Mr. Pendergrass again regarding the appeal although they exchanged multiple emails regarding the status of the Rule 35 motion. *Id*. at 56:6–7. Mr. Hecker stated that he continued to work with the Government regarding the Rule 35 motion, although the Government ultimately did not go forward with the motion. *Id*. at 54:5–20. He testified that the reason Mr. Williams and Mr. Welch brought money to his office after sentencing was to pay $2100 towards the unpaid balance of the initial $10,000 fee; they were not there to pay him for an appeal. *Id*. at 50:20–24; 62:13; 63:1–8. *See also* ECF No. 68-2 (Exhibit 2). Mr. Hecker also testified that if Mr. Pendergrass had directed him to file an appeal (versus asking whether he *could* appeal), he would have asked for a hearing to ask the Court to appoint the Federal Public Defender to represent Mr. Pendergrass in the appeal process because Mr. Pendergrass would not

have been able to pay Mr. Hecker's fee for appellate representation. My. Hecker also testified that his typical fee for appellate work is more than $2500.[5]

On cross examination, Mr. Hecker testified that when he first appeared on Mr. Pendergrass' behalf, he entered a general appearance, which would typically include an appeal. *Id*. at 62:4–5. He also stated that when Mr. Williams and Mr. Welch came to his office after the sentencing to pay him, they did not discuss an appeal; they simply delivered the payment to him for the balance of the bill and then left. *Id*. at 63:1–13. Finally, he testified that, in his opinion, there is a difference between a client directing him to file an appeal and asking whether he *can* file an appeal. *Id*. at 66:1–9.

D. *Credibility Determination*

Credibility determinations of witness testimony in a § 2255 proceeding are generally made by "weigh[ing] the testimony of all of the witnesses, taking into account relevant factors such as their interests in the case, the consistency or inconsistency of their testimony, and their demeanor on the stand[.]" *See Rizo v. United States*, 662 F. App'x 901, 912 (11th Cir. 2016) (per curiam) (citing *United States v. Ramirez-Chilel*, 289 F.3d 744, 750 (11th Cir. 2002)); *see also Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985) (stating that demeanor, vocal inflection, the consistency or inconsistency of testimony, and the internal plausibility

---

[5] There is no transcript citation available for this portion of Mr. Hecker's testimony because the court reporter lost connection during this portion of the evidentiary hearing.

12

or implausibility of testimony are relevant considerations when determining witness credibility).

I found Mr. Hecker's testimony credible. As the subsequent analysis will show, the record supports Mr. Hecker's testimony that he and Mr. Pendergrass spoke about the appeal briefly at the sentencing hearing, Mr. Hecker explained why the appeal would not be in his best interest, and Mr. Pendergrass did not mention the appeal again. Furthermore, Mr. Hecker's ample experience, professional practices, and coherent testimony support the credibility of his account of the post-conviction consultation.

In sum, Mr. Hecker was a credible witness. I find credible all relevant aspects of his testimony, including his testimony that Mr. Pendergrass asked whether he could appeal, but was ultimately dissuaded from doing so based upon Mr. Hecker's advice.

In contrast, Mr. Pendergrass is less sophisticated and has a greater motive to remember the evidence favorably to his current position. Put differently, I find that, today, Mr. Pendergrass *believes* he asked Mr. Hecker to appeal, but balancing all the evidence, I find that he did not, in fact, direct his lawyer to appeal. Immediately after the sentencing, Mr. Pendergrass was extremely upset and emotional, so he is less likely to have retained an accurate memory of the events. In contrast, Mr. Hecker (an experienced criminal defense lawyer) would have been more dispassionate. Also, Mr. Hecker's description of the totality of their post-sentencing conversation rings true

because it reflects the statements that an experienced criminal defense lawyer with a cooperating client logically would have made.

## IV.    STANDARD OF REVIEW

Section 2255 states in relevant part that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution...may move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a).

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Lynn v. United States*, 365 F.3d 1225, 1232-33 (11th Cir. 2004) (citations and internal quotations omitted). If a court finds a claim under § 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

## V.    LEGAL ANALYSIS

A. *Claim 1*

    1.   <u>Subclaim 1</u>

Mr. Pendergrass contends that Mr. Hecker failed to file a requested notice of appeal. ECF No. 8 at 5. "An attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner per se." *Gomez-Diaz v. United States*, 433 F.3d 788, 791–92 (11th Cir. 2005) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)). Here, Mr. Pendergrass argues that Mr. Hecker failed to file a notice of appeal that he specifically requested in the moments immediately following his sentencing. The Government presented evidence that Mr. Pendergrass sought Mr. Hecker's legal advice about whether or not he could file an appeal, and upon hearing Mr. Hecker's advice that it would not be in Mr. Pendergrass' best interest to do so, he acquiesced and declined to mention the appeal to Mr. Hecker again.

"In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken," the Court must ask "whether counsel in fact consulted with the defendant about an appeal." *Flores-Ortega*, 528 U.S. at 478. "Consult" under *Flores-Ortega* means "[]advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id*.

Here, Mr. Hecker's credible testimony supports a finding that he consulted with Mr. Pendergrass about an appeal. Mr. Hecker made a reasonable effort to

discover Mr. Pendergrass wishes regarding appealing. Mr. Hecker advised his client when asked about an appeal, and the matter did not come up again. Mr. Pendergrass claims that he e-mailed Mr. Hecker to inquire about the status of the appeal but without corroboration of this testimony, I do not credit it.

Mr. Hecker, as evidenced by the invoices provided, reasonably understood that the moneys Mr. Williams and Mr. Welch paid him post-sentencing were for the outstanding retainer balance, not for an appeal. This is further supported by Mr. Hecker's testimony that when Mr. Williams and Mr. Welch came to his office to deliver the money, they did not discuss an appeal. The Court finds it understandable that perhaps Mr. Williams and Mr. Welch thought they were paying Mr. Hecker for an appeal (because that is what Mr. Pendergrass told them so as not to disclose that he was cooperating with the Government). But the evidence supports a finding that despite what Mr. Williams and Mr. Welch were told by Mr. Pendergrass, the real reason they were paying additional moneys to Mr. Hecker was because Mr. Pendergrass still had an outstanding balance for Mr. Hecker's representation in the trial court.

Consistent with Mr. Hecker's testimony is the fact that the plea agreement contained a broad appeal waiver and the provision regarding a potential substantial assistance motion. Attorneys routinely tell their clients that filing a direct appeal is inconsistent with cooperating with the Government. *See, e.g., Weeks v. United States*, 482 F. App'x 499, 501 (11th Cir. 2012) (per curiam). Thus, I find the evidence supports the finding that Mr. Pendergrass inquired with Mr. Hecker about whether or not he

could appeal the sentence, but after Mr. Hecker explained the potentially negative consequences of doing so, Mr. Pendergrass did not inquire further and agreed to follow Mr. Hecker's advice not to appeal.

Moreover, even if Mr. Hecker did not consult with Mr. Pendergrass about the appeal, Mr. Pendergrass would not automatically be entitled to relief. Under *Flores-Ortega*, an attorney need not "always consult with the defendant regarding an appeal." 528 U.S. at 480. "[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal where there is reason to think either (1) that a rational defendant would not want to appeal . . . or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id*.

To determine whether a rational defendant would want to appeal, courts consider the following non-exhaustive factors: "[1] whether the conviction follows a guilty plea, [2] whether the defendant received the sentence bargained for as part of a plea agreement, [3] whether the plea agreement waived appellate rights, and [4] whether there are nonfrivolous grounds for appeal." *Fields v. United States*, 577 F. App'x 916, 919 (11th Cir. 2014) (per curiam) (*citing Flores-Ortega*, 528 U.S. at 480; *Otero v. United States*, 499 F.3d 1267, 1270 (11th Cir. 2007)). Nonfrivolous grounds for appeal exist when the defendant has arguably or potentially meritorious issues for appeal. *See Flores-Ortega*, 528 U.S. at 486; *Gomez-Diaz*, 433 F.3d at 793.

Here, no rational defendant would have wanted to appeal. Mr. Pendergrass pleaded guilty, which "reduce[d] the scope of potentially appealable issues and . . . indicate[d] that [Mr. Pendergrass sought] an end to judicial proceedings." *Flores-*

*Ortega*, 528 U.S. at 480. The second factor disfavors Mr. Pendergrass because the plea agreement stated that he could receive up to life imprisonment if he was an armed career criminal, and Mr. Pendergrass received a sentence at the very low end of the guidelines. Furthermore, based on Mr. Hecker's successfully arguments, Mr. Pendergrass' guideline range was reduced from 360 months to life, to 292 to 365 months. The Court then imposed a sentence at the low end of the guidelines. *See Estupinan-Gonzalez v. United States*, No. 17-15586-J, 2018 WL 6919305, at *7 (11th Cir. Nov. 28, 2018) (unpublished order) (finding that rational defendant would not have wanted to appeal, partly because there was no agreement about the sentence and the court imposed a sentence at the bottom of the guidelines).

Regarding the third factor, the plea agreement contained a broad appeal waiver. And, finally, Mr. Pendergrass stated at the hearing that his nonfrivolous ground for appeal was the incorrect calculation of his guideline range. Hr'g Tr. 34:15–35:2, Aug. 19, 2021. Based upon my own view of the record, I do not find the guideline calculation to be an arguably or potentially meritorious issue for appeal, especially considering that the Court sustained Mr. Hecker's objections to the original PSI calculation and lowered the guideline range.

In conclusion, I find that Mr. Hecker did adequately consult with Mr. Pendergrass regarding the appeal even when he did not have a constitutionally imposed duty to consult with Mr. Pendergrass after their conversation about the appeal immediately following the sentencing. For those reasons, Claim 1, subclaim 1 should be **DENIED**.

2. <u>Subclaims 2–5</u> [6]

Mr. Pendergrass alleges that counsel ineffectively failed to: (1) challenge the PSI's findings that he was a career offender and armed career criminal; (2) move to hold his sentencing "in abeyance pending the decision [sic] of the . . . First Step Act"; (3) "[m]ake obvious objection [sic] to the [PSI]; and (4) "to interview witnesses pursuant to the [§] 922(g)(1) [sic]." ECF No. 8 at 5.

To establish a claim of ineffective assistance of counsel, a movant must show that counsel's performance was deficient, and that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687.

To prove deficiency, a movant must show that counsel's performance "fell below an objective standard of reasonableness" as measured by prevailing professional norms. *Id.* at 688. Courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "[B]ecause counsel's conduct is presumed reasonable, for [a movant] to show that the conduct was unreasonable, [he] must establish that no competent counsel would have taken the action that his counsel did take," or failed to take the action that counsel failed to take. *See Chandler v. United States*, 218 F.3d 1305, 1314–15 (11th Cir. 2000) (en banc). To meet this standard, a movant "must establish that particular and

---

[6] Mr. Pendergrass is not entitled to an evidentiary hearing on Claim 1, subclaims 2–5, Claim 2, and Claim 3 because "the motion and the files and records of the case conclusively show that [movant] is entitled to no relief[.]" *See* 28 U.S.C. § 2255(b). In short, the preceding discussion conclusively shows that Mr. Pendergrass' claims are "patently frivolous" and "affirmatively contradicted by the record." *See Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989).

identified acts or omissions of counsel were outside the wide range of professionally competent assistance." *Id.* at 1314 (citation and internal quotation marks omitted). "[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief." *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1297 (11th Cir. 2017) (collecting cases).

To prove prejudice, a movant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Counsel's failure to raise a meritless claim is not prejudicial under *Strickland*. *Hittson v. GDCP Warden*, 759 F.3d 1210, 1262 (11th Cir. 2014).

Mr. Pendergrass has the burden of proof under *Strickland*. *See Chandler*, 218 F.3d at 1312. Further, Mr. Pendergrass bears the burden of proof under § 2255. *Beeman v. United States*, 871 F.3d 1215, 1222 (11th Cir. 2017) (collecting cases). *See also Borden v. Allen*, 646 F.3d 785, 810 (11th Cir. 2011) (section 2255 movant's allegations must satisfy the "heightened pleading requirement[s]" under Rule 2 of the Federal Rules Governing § 2255 Proceedings). "Conclusory allegations of ineffective assistance are insufficient." *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) (per curiam) (citation omitted); *see also Lynn v. United States*, 365 F.3d 1225,

1239 (11th Cir. 2004) (conclusory allegations supporting § 2255 claim do not warrant evidentiary hearing).

Here, judged against these principles, claim 1's remaining subclaims must fail. Mr. Pendergrass alleges no facts to support these subclaims. ECF No. 8 at 5. Consequently, he has not reasonably identified the acts or omissions of counsel that fell outside of the wide range or reasonably professional assistance or pleaded these claims with the requisite degree of particularity. The Court cannot grant § 2255 relief or an evidentiary on such unsubstantiated allegations.

Furthermore, even though these considerations foreclose relief, Mr. Pendergrass' arguments as to subclaims 2 and 5 would prove futile. Regarding subclaim 2 (Mr. Pendergrass' challenge to his classification as a career offender and armed career criminal), the PSI cited three prior felony convictions for drug offenses: (1) sale, delivery, or manufacture of cocaine; (2) possession of cocaine with intent to sell; and (3) sale of cocaine with intent to deliver and possession with intent to sell oxycodone. PSI ¶¶ 45, 60, 73–74. Mr. Pendergrass did not object to the fact of these convictions, thus admitting them "for sentencing purposes." *United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006) (citation omitted). Furthermore, these convictions qualify as "serious drug offenses" and "controlled substance offenses" under, respectively, the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(A), and

21

U.S.S.G. § 4B1.2(b). *United States v. Smith*, 775 F.3d 1262, 1265, 1268 (11th Cir. 2014). Therefore, this subclaim necessarily fails.

Liberally construed, subclaim 5 alleges that counsel failed to interview witnesses who would have been able to prove that he did not possess a firearm, which would have shown that he was innocent of the § 922(g) offense. However, the proffer stated that Mr. Pendergrass "admitted that he recently handled a firearm in his residence but stated that the firearm belong to his son." Case No. 18-60058-CR, ECF No. 23 at 4. Then, at the change-of-plea hearing, Mr. Pendergrass agreed that he possessed a firearm and ammunition on February 23, 2018. Case No. 18-60058-CR, ECF No. 55 at 15. *See also United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." (citation omitted)). At sentencing, Mr. Hecker did an about-face and argued that the gun "belonged to his son." Case No. 18-60058-CR, ECF No. 56 at 19. The Court was unpersuaded because Mr. Pendergrass pleaded guilty to Count 11. *Id.* On this record, Mr. Pendergrass cannot show that the putative witnesses would have demonstrated his innocence or changed the outcome in the case. Therefore, this subclaim necessarily fails.

For the foregoing reasons, Claim 1, subclaims 2–5 should be **DENIED**.

B. *Claim 2 (subclaims 1–4)*

Mr. Pendergrass alleges that the indictment was insufficient because it failed to allege: (1) a specific drug quantity; (2) the prior convictions on which his ACCA enhancement was based; (3) "victims pursuant to [the supposed] 11-level

enhancement"; and (4) "[an] organizer or leadership role [for the] 4-level enhancement." ECF No. 8 at 6.

As the Government correctly notes, Mr. Pendergrass waived this claim by pleading guilty. Generally, a valid "guilty plea waives all nonjurisdictional defects occurring prior to the time of the plea[.]" ECF No. 22 at 16. *See Stano v. Dugger*, 921 F.2d 1125, 1150 (11th Cir. 1991) (en banc) (citation omitted). Furthermore, although the "omission of an element may render the indictment insufficient, it "does not strip the district court of jurisdiction over the case." *United States v. Brown*, 752 F.3d 1344, 1353–54 (11th Cir. 2014). Here, the record clearly reflects that Mr. Pendergrass' guilty plea was valid. *See supra* pp. 3–4.[7] Thus, Mr. Pendergrass' allegations regarding nonjurisdictional defects in the indictment are waived and Claim 2 should be **DENIED**.[8]

C. *Claim 3 (subclaims 1–3)*

Mr. Pendergrass alleges that Mr. Hecker and the Court failed to: (1) explain the elements of the § 922(g)(1) offense; (2) prove any of the elements for the § 922(g)(1) offense; and (3) allege the elements of the offense in the plea agreement. ECF No. 8 at 8.

Subclaim 1 (that counsel ineffectively failed to explain the elements of the § 922(g)(1) offense) fails because it is wholly conclusory. *Id*. at 12. Furthermore, the

---

[7] Mr. Pendergrass also is not challenging the validation of his guilty plea.

[8] Claim 2 should also be denied for the meritorious reasons set forth in the Government's Response. ECF No. 22 at 17–18.

record casts doubt on this conclusory subclaim; Mr. Pendergrass stated at the change-of-plea hearing that he talked to Mr. Hecker about everything in his case and was satisfied with his representation. Case No. 18-60058-CR, ECF No. 55 at 8, 45. Also, Mr. Hecker reasonably could have decided not to object to the Court's alleged failure to explain the remaining elements of the § 922(g) offense. The Court explained that Count 11 alleged "possession of a firearm and ammunition by a convicted felon." Case No. 18-60058-CR, ECF No. 55 at 15.  In response, Mr. Pendergrass stated that he was a convicted felon who possessed a loaded firearm and that he wished to plead guilty to that charge. *Id*. Further, the Government stated that Mr. Pendergrass possessed the firearm and ammunition in interstate commerce, and Mr. Pendergrass stated that he agreed with the Government. *Id*. at 31–32, 35. Therefore, counsel reasonably could have concluded that the Court adequately apprised Mr. Pendergrass of the elements of the offense and that any objection would have been futile. Moreover, assuming counsel deficiently failed to object to the Court's failure to explain the elements of Count 11, Mr. Pendergrass has not alleged, and the record does not reflect, any prejudice resulting from this failure.

Regarding subclaim 2, "§ 922(g) makes possession of a firearm or ammunition unlawful when the following elements are satisfied: (1) a status element . . . ; (2) a possession element . . . ; (3) a jurisdictional element . . . ; and (4) a firearm element . . . ." *Rehaif v. United States*, 139 S. Ct. 2191, 2195–96 (2019).[9]  Any claim that the

---

[9] "In *Rehaif*, the Supreme Court held that 18 U.S.C. § 922(g), when read in conjunction with § 924(a)(2), requires not only that the defendant know that he possesses a firearm, but also know of his status prohibiting him from doing so, i.e. in

indictment failed to allege, or that the Court failed to explain, one or more of these elements is subject to the procedural default rule. *See Bousley v. United States*, 523 U.S. 614, 621 (1998) ("[T]he voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review."); *United States v. Innocent*, 977 F.3d 1077, 1084 (11th Cir. 2020) (noting that the procedural default rule applies to *Rehaif* claims).

"A claim not raised on direct appeal is procedurally defaulted unless the petitioner can establish cause and prejudice for his failure to assert his claims on direct appeal." *McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir. 2001) (citation omitted). "A defendant can avoid a procedural bar only by establishing one of the two exceptions to the procedural default rule." *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004) (per curiam) (citations omitted). "Under the first exception, a defendant must show cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error." *Id.* (*citing Bousley*, 523 U.S. at 622). Under the second exception, the defendant must show that he is "actually innocent." *Id.* at 1234–35 (collecting cases).

A movant may show cause "where a [] claim is so novel that its legal basis is not reasonably available to counsel[.]" *Reed v. Ross*, 468 U.S. 1, 16 (1984). Furthermore, "[a]ttorney error [during an appeal on direct review] that constitutes

---

Bates's case, know that he is a felon." *United States v. Bates*, 960 F.3d 1278, 1295 (11th Cir. 2020) (citation omitted).

ineffective assistance of counsel is cause [to excuse a procedural default]." *Coleman v. Thompson*, 501 U.S. 722, 753–54 (1991).

Here, by failing to raise it on direct appeal, Mr. Pendergrass procedurally defaulted subclaim 2. "*Rehaif* was not truly novel in the sense necessary to excuse procedural default." *Innocent*, 977 F.3d at 1084. Any argument that Mr. Hecker ineffectively failed to raise a *Rehaif* challenge fails too because: (1) the Supreme Court had yet to decide *Rehaif* when the Court entered judgment; and (2) any *Rehaif* claim would have failed under then-binding precedent. *See United States v. Jackson*, 120 F.3d 1226, 1229 (11th Cir. 1997) (per curiam), *abrogated by Rehaif*, 139 S. Ct. 2191; *see also Geter v. United States*, 534 F. App'x 831, 836 (11th Cir. 2013) (per curiam) ("It is well-settled that an attorney's failure to anticipate a change in the law will not support a claim of ineffective assistance of appellate counsel." (collecting cases)).

Nor has Mr. Pendergrass shown actual innocence. "To establish actual innocence, [movant] must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (citation omitted). "[A]ctual innocence means factual innocence, not mere legal insufficiency." *Id.* (citation omitted). Thus, "[t]he habeas court must make its determination concerning the [the movant's] innocence in light of all the evidence." *Schlup v. Delo*, 513 U.S. 298, 328 (1995).

Here, to reiterate, Mr. Pendergrass stated under oath that he was a felon who possessed a loaded firearm. Thus, although he stated in the factual proffer that the firearm belonged to his son, a juror could, in light of all of the evidence, readily find

26

otherwise. *See Rogers*, 848 F.2d at 168. Furthermore, Mr. Pendergrass did not object to the PSI's findings regarding his criminal history, which is extensive and includes several stays in prison. PSI ¶¶ 55–75; *see also United States v. Moore*, 954 F.3d 1332, 1337–38 (11th Cir. 2020) (record established that appellants knew they were felons, partly because they "previously served lengthy sentences for felony convictions").

Finally, as the Government correctly argues in its Response, subclaim 3 "is meritless on its face as there is no such requirement." ECF No. 22 at 6. For these reasons, subclaims 1–3 fail and thus, Claim 3 should be **DENIED**.

## VI.   CERTIFICATE OF APPEALABILITY

A prisoner seeking to appeal a district court's final order denying his motion to vacate has no absolute entitlement to appeal, but must obtain a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253 (c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009). This Court should issue a certificate of appealability only if the prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253 (c)(2). To merit a certificate of appealability, prisoners must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). *See also Eagle v. Linahan*, 279 F.3d 926, 935-36 (11th Cir. 2001).

In this case, there is no basis to issue a certificate of appealability.

## VII.    RECOMMENDATION

Based on the foregoing, **IT IS RECOMMENDED** that Mr. Pendergrass'
Amended Motion to Vacate (ECF No. 8) be **DENIED**. In addition, this Court should
**NOT ISSUE** a certificate of appealability. Accordingly, this case should be **CLOSED**.

### NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and
Recommendation with the Honorable Robin L. Rosenberg, United States District
Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of
being served with a copy of this Report and Recommendation. Failure to timely file
objections shall constitute a waiver of a party's "right to challenge on appeal the
district court's order based on unobjected-to factual and legal conclusions." 11th Cir.
R. 3-1 (2016).


**DONE and SUBMITTED** in Chambers at West Palm Beach, Palm
Beach County, in the Southern District of Florida, this 15th day of September 2021.


_____
BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE

28